UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN A. ACUNA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. EDCV 14-2404 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff John A. Acuna filed this action on November 24, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On August 7, 2015, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings.

# I.

## PROCEDURAL BACKGROUND

On March 28, 2011, Acuna filed applications for disability insurance benefits and supplemental security income, alleging an onset date of March 27, 2008. Administrative Record ("AR") 220-30. The applications were denied initially and on reconsideration. AR 127, 157. Acuna requested a hearing before an ALJ. AR 176-77. On February 12, 2013, the ALJ conducted a hearing at which Acuna, a medical expert, and a vocational expert ("VE") testified. AR 53-98. On February 27, 2013, the ALJ issued a decision denying benefits. AR 17-28. On September 15, 2014, the Appeals Council denied the request for review. AR 3-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Acuna met the insured status requirements through March 31, 2012. AR 19. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Acuna had the severe impairments of status post fracture and fusion of T-10-12 spine (onset March 2, 2011); status post hematoma with plate placement (onset 2006); post-concussion disorder; major depressive disorder, recurrent; bipolar disorder; borderline intellectual functioning; and anxiety disorder, NOS. AR 19. His impairments did not meet or equal a listing. AR 20.

The ALJ found that Acuna had the residual functional capacity ("RFC") to perform light work. He could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight-hour workday, but must be able to change position every one to three minutes every hour; and stand/walk for two hours out of an eight-hour workday. He could perform occasional postural activities. He was precluded from

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

climbing ladders, scaffolds, or ropes; working at unprotected heights; and walking on uneven terrain.  He was limited to simple, routine tasks that did not require hypervigilence or being in charge of the safety operations of others.  He was limited to brief, superficial contacts with the public.  He was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that he could have performed such as electrical assembler and small parts assembler.  AR 21-27.

### C. Step Five of the Sequential Analysis

Acuna contends that the ALJ posed an incomplete hypothetical to the VE.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do.  *Lounsburry*, 468 F.3d at 1114.  If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits.  If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits.  *Id*.  "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id*.

An ALJ may rely on VE testimony given in response to a hypothetical question that contains all of the limitations the ALJ found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  An ALJ is not required to include limitations that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Acuna contends that, despite fully crediting the assessments of the State Agency physicians, the ALJ's hypothetical to the VE did not include their finding of a moderate limitation in his ability to respond appropriately to changes in the work setting.  Based on *Bagby v. Comm'r*, 606 Fed. Appx. 888 (9th Cir. 2015), Acuna argues that the

hypothetical did not reflect a limitation in the ability to respond appropriately to changes in the work setting.  In *Bagby*, the ALJ limited the claimant to simple, repetitive tasks, no contact with the public and occasional interaction with coworkers.  The court found that these limitations were distinct from the claimant's ability to interact with others and deal with changes in a routine work setting.  *Id.* at 890.

The ALJ's hypothetical in this case included not only a limitation to simple routine tasks and brief superficial contact with the public, but also a requirement that Acuna is precluded from jobs that require hypervigilence or put him in charge of the safety operations of others.  AR 21, 90.  The Commissioner argues that these additional limitations accommodated moderate limitations in Acuna's ability to respond appropriately to changes in the work setting.  Acuna has not shown that a moderate limitation in his ability to respond appropriately to changes in the work setting would preclude him from performing simple, routine tasks that do not require hypervigilence, do not require being in charge of the safety operation of others, and limit him to only brief superficial contacts with the public.  *See Rogers v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 15, 17 (9th Cir. 2012) (restriction to "simple routine tasks performed in unskilled work" included a moderate limitations in social functioning).  Acuna has not shown error.

To the extent Acuna argues that a significant number of jobs in the national economy is not available, his argument is without merit.  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner bears the burden of establishing that there exists other work in "'significant numbers.'"  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

The VE testified that Acuna could perform occupations such as electrical assembler, with 600 jobs in California and 11,000 jobs in the nation, eroded to allow for

reduced standing/walking; and small parts assembler, with 700 jobs in California and 13,000 jobs in the nation, eroded to allow for reduced standing/walking. AR 91.

Relying on *Gutierrez v. Comm'r*, 740 F.3d 519 (9th Cir. 2014), Acuna argues that if the *Gutierrez* court found 25,000 national jobs "a close call to constitute a significant number of jobs," then 25,000 jobs constitutes "a baseline" for what represents a significant number of jobs, and 24,000 jobs does not constitute a significant number of jobs. The Ninth Circuit in *Gutierrez*, however, did not establish a baseline of 25,000 jobs. Rather, it found that "25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'" *Id.* at 529. The court found that its precedent did not preclude the possibility that 25,000 jobs constitute a significant number and noted that another circuit court had found 10,000 national jobs to be a significant number. *Id.* Moreover, Acuna does not argue that the number of regional jobs was insignificant. Acuna has not shown error.

### D. Treating Physician's Opinion

Acuna contends the ALJ erred in rejecting the opinion of Dr. Puri, a treating psychiatrist.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary

must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

      Dr. Puri completed a Work Capacity Evaluation (Mental) form on January 3, 2013.  AR 701-04.  Dr. Puri had been treating Acuna every one to two months since September 15, 2011.  She diagnosed bipolar disorder II, and assessed a Global Assessment of Functioning ("GAF") of 50.[2]  Acuna had experienced repeated episodes of suicidal thoughts, mood swings and irritability, and had symptoms of psychomotor agitation and social isolation.  AR 701.  Dr. Puri assessed moderate limitations in the ability to remember locations and work-like procedures, carry out short and simple instructions, maintain regular attendance within customary tolerances, ask simple questions or request assistance, work in coordination with or in proximity to others without being distracted by them, maintain socially appropriate behavior, and demonstrate reliability.  AR 702-03.  Acuna had marked limitations in the ability to understand and remember very short and simple instructions, carry out detailed instructions, maintain attention and concentration for an extended period, sustain work-activities within a full-time work schedule, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, follow work rules, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to usual work situations and to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently

---

[2] A GAF of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV").

of others. AR 702-04. Acuna had extreme limitations in the ability to understand and remember detailed instructions, and perform at a consistent pace without an unreasonable number and length of rest periods. AR 702-03. Dr. Puri opined that Acuna could not perform full-time work because of panic attacks, mood swings and suicidal ideations. AR 704.

The ALJ gave no weight to Dr. Puri's opinion as inconsistent with the objective medical evidence and with the treatment records. AR 25.

In September 2006, prior to the alleged onset date of March 27, 2008, Acuna had been assaulted by a gang and had a craniotomy. AR 294. On March 1-8, 2007, Acuna was admitted to a hospital due to attempted suicide and depression. AR 23, 303-11. Acuna was admitted again on June 8-21, 2007, when he stabbed himself in the chest after arguing with his girlfriend and smoking marijuana. Acuna had been off his medications at the time. Acuna was diagnosed with bipolar disorder, mixed type; polysubstance dependence, and early full remission. Acuna's GAF was assessed to be in the range of 45-50. AR 23, 294-95.

The ALJ noted a considerable gap in Acuna's mental health treatment. AR 24. After Acuna applied for benefits, an examining psychologist, Dr. Johnson, conducted an examination on July 21, 2011, more than three years after Acuna's last hospitalization. AR 547-51. Acuna's overall full scale IQ was 73, which is indicative of borderline intellectual functioning and which Dr. Johnson found to be a good estimation of his functioning. AR 549. Testing indicated his memory is moderately impaired. AR 550. Acuna reported passive suicidal ideation, and well as feeling depressed and anxious. AR 548. Dr. Johnson opined Acuna had cognitive impairment and emotional difficulties, likely exacerbated by traumatic brain injury in 2006. AR 550. Dr. Johnson diagnosed postconcussional disorder; major depressive disorder, recurrent, moderate; and anxiety

disorder NOS. Dr. Johnson assessed a GAF score of 70.[3] Dr. Johnson opined that Acuna could understand, remember and carry out short, simplistic instructions without difficulty and without special supervision. He would have moderate difficulty understanding and completing complex instructions without supervision and would have mild difficulties socializing with peers, coworkers, and bosses on a regular basis. AR 550-51.

Afterwards, Acuna began seeing Dr. Puri, a psychiatrist, on September 15, 2011. AR 24, 576. Acuna reported feeling depressed with mood swings and racing thoughts. Dr. Puri noted good personal appearance, eye contact and relevant speech. AR 576. On October 6, 2011, Dr. Prui switched Acuna from Risperdal to Depakote, and referred Acuna for psychotherapy.[4] AR 24, 575. On December 1, 2011, Acuna reported that he felt irritable and had stopped taking depakote. Acuna had a depressed mood, poor insight, and suicidal ideation with no intent. Dr. Puri counseled Acuna on the importance of taking his medications. AR 24, 578. On January 12, 2012, Acuna reported that he had taken depakote regularly and "his mood swings are less." AR 24, 577. Acuna did not have suicidal ideation but his mood remained depressed. AR 577. On January 3, 2013 (the date of Dr. Puri's opinion), Acuna had mood swings and angry outbursts, and had run out of medications. His mood was anxious and angry. Dr. Puri switched Acuna from Ambien to Seroquel. AR 24, 705.

The ALJ's finding that Dr. Puri's opinion was inconsistent with her treatment records is not supported by substantial evidence. The Commissioner argues that the treatment notes also indicate good appearance, appropriate affect, and fair insight. AR 574-78, 705-10. However, observations of improvement must be read in context of the

---

[3] A GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV 34.

[4] The record does not contain psychotherapy notes for Acuna.

9

overall diagnostic picture. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Acuna's longitudinal treatment records show depression, angry outbursts and suicidal ideation. Dr. Johnson's testing indicate borderline intellectual functioning, cognitive impairment and memory impairment. The medical expert noted that Acuna reported spending time alone or with one friend. AR 87. The ALJ erred.

### E. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (citation omitted), *amended* 2015 WL 6684997 (Nov. 3, 2015); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 798 F.3d at 755 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment,

other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13) (quotation marks omitted).[5] The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Acuna's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible." AR 22. The ALJ primarily relied on three reasons: (1) the objective medical evidence did not support Acuna's claims of extreme limitations; (2) the four-year gap in mental health treatment was inconsistent with the medical response that would be expected if symptoms and limitations were as severe as Acuna described; and (3) Acuna's activities of daily living revealed a person capable of performing substantial gainful activity. AR 22-26.

Failure to seek treatment may be considered in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (claimant's statements may be less credible if level or frequency or treatment is inconsistent with degree of complaints); *see also Burch*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment may be considered). The ALJ noted that the four-year gap in mental health treatment was inconsistent with the treatment expected if Acuna's symptoms and limitations were as severe as he described. AR 26. There is no evidence in the record of mental health treatment between June 2007 and September 2011. Acuna argues that it is

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

questionable to chastise a person with a mental impairment for failing to seek treatment. However, Acuna has not provided any reason for failing to seek treatment, and the ALJ could property rely on the absence of any reason in the record. *See Molina*, 674 F.3d at 1114 ("there was no medical evidence that [claimant's] resistance was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints.") (quoting SSR 96-7p) (internal quotation marks omitted)).

With respect to Acuna's physical impairments, the lack of objective medical evidence supporting the degree of limitation is a factor that an ALJ may consider in assessing credibility. *Burch*, 400 F.3d at 681. The ALJ found that the objective clinical and diagnostic findings did not support Acuna's allegations. AR 23-26. The record indicated normal laboratory results and objective findings, normal physical examinations, and pain that was controlled by medication. AR 23, 344-45, 364, 422, 424, 659-60, 670. Acuna had fusion surgery on March 10, 2011, after injuring his lower back in a family football game. AR 23, 480-81. He improved after surgery, and discontinued pain medications within five months. Acuna was to return in a year and a half for x-rays and hardware removal. AR 556. The orthopedic consultative examiner, Dr. Bilezikjian, examined Acuna on September 6, 2011. AR 24, 543-46. Acuna had moderate difficulty getting into and out of a supine position, and getting on and off the examination table. Acuna walked with a slight limp on the left side with his left foot slightly externally rotated. AR 545. The cervical spine examination was normal. Range of motion of the thoracolumbar spine was a forward flexion of 30 degrees, extension of five degrees, and lateral bending of 10/10 degrees. Straight-leg raising was positive on the left side at 70 degrees. Examination of the extremities and joints was normal. The neurologic examination was normal, although Acuna was not very cooperative during examination of the lower extremities. Acuna was diagnosed with compression fracture of T12, status post T10 to L2 fusion with Harrington rods; and chronic back pain secondary to injury, fracture, and surgery with no radiculopathy. AR 545-46. Dr.

Bilezikjian opined that Acuna could lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight-hour workday with frequent changes of position; walk and stand for two hours per day; bend, kneel, stoop, crawl, and crouch on an occasional basis; and never walk on uneven terrain, climb ladders, or work at heights. AR 24, 546.

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ found Acuna's activities of daily living inconsistent with the severity of his pain as alleged. AR 26. Acuna prepared his own meals, performed household chores including laundry, shopped with his step-mother, had a driver's license and could drive, watched DVD movies, watched a friend train at the gym about once a month, read, cared for the family dog, and went with his parents to church from time to time. AR 22, 26, 64-74. The ALJ also noted that Acuna reported he last worked as a machine operator and stopped working when he was laid off.[6] AR 22, 544.

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of the treating psychiatrist's opinion and further proceedings consistent with this opinion.

---

[6] The record indicates a lay-off date in 2009 and subsequent receipt of unemployment benefits until 2011. AR 60, 62.

1  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and
2 the Judgment herein on all parties or their counsel.
3
4 DATED: November 24, 2015
5                                                                  ALICIA G. ROSENBERG
                                                                  United States Magistrate Judge
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28